United States District Court
Northern District of California

RUBEN SUMERA,

              Plaintiff,

      v.

ERIC HOLDER, et al.,

              Defendants.

Case No.: 4:13-cv-1950-KAW

ORDER GRANTING MOTION FOR A MORE DEFINITE STATEMENT; GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

      Defendant Eric Holder moves to dismiss Plaintiff Ruben Sumera's amended complaint and moves for a more definite statement. The motion has been fully briefed and is suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons set forth below, the Court GRANTS the motion for a more definite statement. The Court also GRANTS the motion to dismiss with respect to certain issues Plaintiff concedes in his opposition but otherwise DENIES the motion to the extent it seeks dismissal of Plaintiff's amended complaint for failure to state a claim upon which relief can be granted or for failure to exhaust administrative remedies.

## I.     BACKGROUND

### A.    Factual background

      Ruben Sumera ("Plaintiff") brings this action pursuant to Title VII of the Civil Rights Act, § 42 U.S.C. 2000e-16 ("Title VII") and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621. (Am. Compl., Dkt. No. 25.) According to Plaintiff, he worked as an auditor with the Department of Justice, Office of the Inspector General, San Francisco Division, from April 1998 through his alleged forced resignation in March 2010. (*Id.* ¶ 7.) He alleges that his supervisors engaged in a series of discriminatory conduct against him because of his race (Filipino), national origin (Philippines), and age (over 40). (*Id.*) He also avers that this

discriminatory and retaliatory conduct resulted from his complaints about unlawful discrimination and his participation in formal proceedings to protect against such unlawful discrimination.  *(Id.)*

Plaintiff asserts that he was and is qualified for his position, but that he began experiencing problems at work when his first and second-line supervisors, David Gaschke and Laura Nicolosi, both Caucasian, joined the San Francisco Division.[1]  *(Id.* ¶¶ 7, 8, 10.)  According to him, before these individuals became his supervisors, he was "ably performing his job" and "[b]ut for the harassment and actions of the two individuals . . . [he] would have been able to meet standards for successful performance; any perceived performance deficiency was the result of the harassment and adverse employment actions by his employer."  *(Id.* ¶ 16.)

Plaintiff contends that on July 31, 2009, Nicolosi placed him on a performance improvement plan after he was late on one audit assignment, and while only a single auditor timely completed assignments during the previous year, no other auditor received a performance improvement plan.  *(Id.)*  This plan, Plaintiff claims, was given to him in the middle of his next assignment, disrupting his workload.  *(Id.* ¶ 17.)  He responded to the performance improvement plan on August 5, 2009, challenging "certain aspects of and conclusions in [it]."  *(Id.* ¶ 30.)  On August 18, 2009, Nicolosi required Plaintiff to submit daily reports instead of weekly reports.  *(Id.* ¶ 31.)

He asserts that "[a]s late as 2008, [his] work was satisfying the prerequisite to continued employment."  *(Id.* ¶ 20.)  He also avers that on the performance appraisal that preceded the performance improvement plan, he received an overall rating of "successful," from the assistant regional audit manager, with only Nicolosi noting deficiencies in his performance.  *(Id.* ¶ 21.)  That performance appraisal covered the period from October 1, 2007 through September 30, 2008.  *(Id.)*

Plaintiff also alleges that he was assigned to clean the kitchen during his audit, and that for the week he spent on "the humiliating task," he was unable to work on his audit, resulting in another citation for tardiness.  *(Id.)*  Plaintiff describes the performance improvement plan and the kitchen cleaning tasks as "discriminatory work assignments," which materially affected the terms

---

[1] It is unclear when Nicolosi and Gaschke joined the San Francisco Division.

United States District Court
Northern District of California

and conditions of his employment, depriving him of "the opportunity to do his job on equal footing with similarly situated employees." (*Id.* ¶ 18.) He claims that auditors who were not members of a protected class received preferential treatment. (*Id.* ¶ 19.) For example, a Caucasian auditor with the same type of assigned audit report as Plaintiff had two other auditors to assist him, though Plaintiff had no such support. (*Id.*) Plaintiff consistently complained about this harassment. (*Id.* ¶ 24.) According to Plaintiff, his supervisors had developed a pattern of singling out minorities and people over the age of 40 for separation beginning in October 29, 2009. (*Id.*)

Plaintiff alleges that after constant bullying, harassment, and other acts of discrimination, he filed an informal EEOC complaint on September 11, 2009. (*Id.* ¶¶ 14, 32.) The complaint included allegations of discrimination based on race, national origin, and age. (*Id.*) After being contacted by the EEOC, Plaintiff's supervisors responded to the complaint on October 21, 2009. (*Id.* ¶¶ 33, 34.) Plaintiff then filed a formal complaint on December 14, 2009. (*Id.* ¶¶ 15, 35.)

On February 25, 2010, five months after the filing of his informal complaint and two months after the filing of his formal complaint, he received a notice of proposed removal and an unsatisfactory performance review, both in retaliation for his EEOC complaints. (*Id.* ¶ 38.) Plaintiff alleges that he responded to the notice of proposed removal on March 5, 2010, after which he was forced to choose early retirement over termination, and "[r]ather than accept a discriminatory and retaliatory termination, [he] submitted his resignation letter on March 24, 2010." (*Id.* ¶¶ 38, 39, 47.) According to Plaintiff, the EEOC "'finally' received [his] original complaint" on January 13, 2010. (*Id.* ¶ 36.) The EEOC issued an unfavorable decision on December 12, 2012. (Carradero Decl., Ex. A, EEOC Decision.)

### B.    Procedural background

On April 29, 2013, Plaintiff filed his complaint against Attorney General Eric Holder ("Defendant"),[2] Gaschke, and Nicolosi, alleging a first cause of action for discrimination in violation of Title VII, a second cause of action for constitutional violations, and a third cause of

---

[2] Plaintiff has conceded that Attorney General Eric Holder is the only proper defendant in this case. Pl.'s Opp'n at 2, Dkt. No. 32.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    action for supervisory liability.  (Compl., Dkt. No. 1.)  Defendant moved to dismiss the

2    complaint, Dkt. No. 21, and in lieu of filing an opposition to the motion, Plaintiff filed a "Notice

3    of Intent to Amend in Response to Motion to Dismiss," Dkt. No. 24.  He filed an amended

4    complaint on March 20, 2014, in which he asserts a first cause of action, captioned "Title VII,"

5    and a third cause of action, captioned "ADEA."[3]  (Am. Compl, Dkt. No. 25.)  On April 3, 2014,

6    Defendant moved to dismiss all causes of action against the Department of Justice, strike all

7    allegations of tortious conduct and/or constitutional violations, strike allegations outside the scope

8    of Plaintiff's EEOC complaint, strike Plaintiff's claims for punitive damages, and strike Plaintiff's

9    claims for damages against individual employees who are not proper parties to this action.[4]

10   (Def.'s Mot. at 1, Dkt. No. 27.)  Defendant also seeks dismissal of the first and third causes of

11   action without prejudice, as well as a more definite statement for any remaining claim asserted

12   against him.  *(Id.)*

13          After the Court issued an order to show cause, Plaintiff filed an opposition to the motion

14   on May 9, 2014.  (Pl.'s Opp'n, Dkt. No. 32.)  In his opposition, Plaintiff concedes that (1) the only

15   proper defendant is the Attorney General, in his official capacity, (2) his prayer for punitive

16   damages should be dismissed, and (3) "the constitutional claims outside the EEOC exhaustion

17   process [*Bivens*] are not cognizable as to this former federal employee, absent an independent

18   basis for such a claim which on these facts does not appear."  *(Id.* at 2.)  He argues, however, that

19   his remaining claims, as exhausted, are viable.  *(Id.)*  Defendant filed a reply to Plaintiff's

20   opposition on May 16, 2014.  (Def.'s Reply, Dkt. No. 34.)

21          The Court ordered Plaintiff to submit supplemental briefing on whether Plaintiff's

22   allegations go outside the scope of the EEOC charge and whether the amended complaint

23   contains sufficient factual matter to state a claim for relief that is plausible on its face.  (May 30,

24

---

[3] The Court presumes Plaintiff's ADEA claim is erroneously captioned as the third cause of

25   action.

26   [4] Because Defendant has not argued that the material it seeks to have stricken is redundant,
     immaterial, impertinent, or scandalous, *see* Fed. R. Civ. P. 12(f), the Court treats Defendant's
27   motion to strike as a motion to dismiss, consistent with *Whittlestone, Inc. v. Handi-Craft Co.*, 618
     F.3d 970, 974 (9th Cir. 2010) (Rule 12(b)(6), not Rule 12(f), allows a court to dismiss part or all
28   of a complaint.).

2014 Order, Dkt. No. 37.)  Plaintiff filed his supplemental brief on June 6, 2014.  (Pl.'s Supplemental Br., Dkt. No. 38.)

## II.    DISCUSSION

### A.    Motion for a more definite statement

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 12(e) authorizes a motion for a more definite statement when the pleading at issue is "so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).

The Court grants Defendant's motion for a more definite statement on the ground that Plaintiff's amended complaint does not conform to Federal Rule of Civil Procedure 10(b). Plaintiff has failed to plead each cause of action separately, lumping together all Title VII claims, irrespective of whether the claims are based on alleged race, age, or national origin, discrimination, harassment, or retaliation.  As such, the amended complaint is so vague and ambiguous that Defendant cannot reasonably prepare a response.  Even the Court had a very difficult time deciphering the causes of action in the amended complaint.  It is unclear whether each Title VII claim is based on age, race, and national origin, or just race and age.

Accordingly, Plaintiff shall file a second amended complaint within 14 days of this order. In his second amended complaint, Plaintiff shall present each distinct Title VII claim separately, consistent with Federal Rule of Civil Procedure 10(b) ("If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count . . . .").

### B.    Motion to dismiss

#### 1.    Failure to exhaust administrative remedies

Defendant argues that Plaintiff cannot assert issues outside the scope of the EEOC charge and may only pursue the allegations and claims that have been administratively exhausted.  *(Id.)* On these grounds, Defendant seeks dismissal, with prejudice, of all allegations and claims not administratively exhausted.  (*Id.* at 13-14.)

United States District Court
Northern District of California

United States District Court
Northern District of California

1    In his opposition, Plaintiff concedes that his only viable claims are those he

2    administratively exhausted.  (Pl.'s Opp'n at 2.)  In his supplemental brief, he asserts that the

3    "allegations in the First Amended Complaint (FAC) do not go outside the scope of the EEOC

4    charge" and adds that:  "[t]here were four claims submitted to the EEOC:  Discrimination through

5    a hostile work environment based on (1) race (Filipino), (2) national origin (Phillippines) [*sic*],

6    and (3) age (dob: . . . 1956)[,] and (4) retaliation based on protected activity."  (Pl.'s Supp. Br. at

7    2, 9.)  This description reflects the issue raised during the administrative proceedings, which, in

8    the EEOC decision, was phrased as follows:  "Does the evidence, when considered in the light

9    most favorable to the Complainant, demonstrate that he was discriminated against when subjected

10   to a hostile work environment based upon his race (Filipino), national origin (Phillippines) [*sic*]

11   and age (dob: . . . 1956) and retaliated against for prior EEO activity when he was issued a Notice

12   of Proposed Removal on February 26, 2010[?]"  (Carradero Decl., Ex. A, EEOC Decision at 2.)

13   Filing a charge with the EEOC is a prerequisite to bringing a civil lawsuit on a Title VII or

14   ADEA claim.  *Jasch v. Potter*, 302 F.3d 1092, 1094 (9th Cir. 2002); *Santa Maria v. Pacific Bell*,

15   202 F.3d 1170, 1176 (9th Cir. 2000), overruled on other grounds by *Socop-Gonzalez v. INS*, 272

16   F.3d 1176, 1194 (9th Cir. 2001).  The jurisdictional scope of a plaintiff's action in district court

17   depends on the scope of the EEOC charge and investigation.  *EEOC v. Farmer Bros. Co.*, 31 F.3d

18   891, 899 (9th Cir. 1994).  The specific claims made in district court must ordinarily be presented

19   to the EEOC.  *Albano v. Schering-Plough Corp.*, 912 F.2d 384, 385 (9th Cir. 1990).  The district

20   court, however, has jurisdiction over any charges of discrimination that are like or reasonably

21   related to the allegations made before the EEOC or that could reasonably be expected to grow out

22   of the allegations.  *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990).

23   The EEOC decision squarely addressed Plaintiff's claims that that he was singled-out for

24   scrutiny and micro-managed, even though other auditors were late with their work.  (Carradero

25   Decl., Ex. A, EEOC Decision at 10.)  It also discussed Plaintiff's claims of harassment, as to

26   which Plaintiff "primarily point[ed] to the matters surrounding Agency efforts to improve his

27   performance as examples of how he has been harassed on account of his age, race, national origin

28   and in reprisal for prior EEO activity."  (*Id.* at 11.)

United States District Court
Northern District of California

Defendant fails to explain why or how particular allegations in the amended complaint are beyond the scope of the EEOC complaint.  (*See* Def.'s Mot. at 13-14; Def.'s Reply at 3 ("The motion listed paragraphs 9-13, 16, 18, 19, 23-25, 32 and 40-45 as vague and general allegations that appeared to allege claims beyond the specific adverse employment action denied in the administrative proceedings and sought an order of dismissal with prejudice.").)  On the face of the amended complaint, it appears that all of the claims Plaintiff asserts in the pleading were raised during the administrative proceedings.  *See Jasch*, 302 F.3d at 1095-96 ("In short, if an agency reaches the merits of a claim . . . administrative remedies should be presumed sufficiently exhausted to permit suit in federal court.") (footnote omitted).  For this reason, the Court rejects Defendant's argument that certain allegations must be dismissed because they are beyond the scope of the EEOC charge.

Therefore, Defendant's motion to dismiss for failure to exhaust administrative remedies is denied.

2.      Failure to state a claim

Defendant also moves to dismiss Plaintiff's amended complaint for failure to state a claim upon which relief can be granted.  (Def.'s Mot at 14, 15, 16, 17, 18.)  He asserts that Plaintiff makes vague and general allegations of discrimination, harassment, and retaliation without stating sufficient facts or identifying the specific actions giving rise to his claims.  (*Id.* at 14.)

In his opposition, Plaintiff offers the following legal argument:

> Because the complaint should be construed favorably to Plaintiff, the Court should not dismiss the FAC for failure to state a claim unless it appears beyond a doubt that Plaintiff can prove no set of facts in support of his claims.  *Conley v. Gibson*, 355 U.S. 41, 45 (1957); *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).
>
> It is no secret what this case is about:  Alleged discrimination in the work-place [*sic*], as described in the FAC and the EEOC ruling attached to defense counsel's declaration.
>
> However, if the Court finds that the FAC lacks sufficient specificity, Plaintiff requests that he be granted leave to amend.

(Pl.'s Opp'n at 3-4.)

Despite Plaintiff's contention to the contrary, the *Iqbal-Twombly* pleading standard governs a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be

granted.  Under the current framework, a Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (internal citations and quotations omitted).

A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (citation omitted).  In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  "Threadbare recitals of the elements of a cause of action" and "conclusory statements" are not adequate.  *Iqbal*, 556 U.S. at 678 (citation omitted); *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.") (citation omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . .  When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (internal quotations and citations omitted).

Applying these cases, the Court rejects Plaintiff's argument that the amended complaint should not be dismissed "for failure to state a claim unless it appears beyond a doubt that Plaintiff

can prove no set of facts in support of his claims."[5]  (Pl.'s Opp'n at 3-4 (citations omitted).)  The Court, however, concludes that under the *Iqbal-Twombly* standard, the factual allegations in amended complaint are sufficient to survive Defendant's motion to dismiss.

### a.   *Discrimination under Title VII*

In order to state a claim for discrimination under Title VII, a plaintiff must show that (1) he belongs to a protected class (40 years of age or older, a person with a disability, a person of a minority race), (2) he was qualified for the position, (3) he was subject to an adverse employment action, and (4) similarly situated individuals outside his protected class were treated more favorably.  *Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003).  A similarly situated person is one whose employment situation is similar to Plaintiff's in all material respects.  *Morgan v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006).

Defendant argues that Plaintiff has failed to allege sufficient facts in support of his discrimination claim.  (Def.'s Mot. at 15.)  More specifically, Defendant asserts that Plaintiff has not alleged sufficient facts with respect to (a) his qualifications for any position during the relevant time period, (b) any adverse employment action taken against him because of his status as a member of a protected class, or (c) particulars of any purportedly similarly situated individuals outside of his protected class being treated more favorably.  *(Id.)*

Plaintiff argues that all elements for his discrimination claims are met in this case.  (Pl.'s Supplemental Br. at 8.)  While the bulk of the allegations in the amended complaint are vague, conclusory, and at times, identical to paragraphs appearing in other parts of the pleading, Plaintiff has stated a claim for discrimination that is plausible on its face.

With respect to his qualifications, Plaintiff alleges that '[h]e is and was qualified for the position of federal auditor," that he "was ably performing his job as auditor at GS-13, that he was

---

[5] On this point, the United States Supreme Court in *Twombly* has stated the following:  "The 'no set of facts' language has been questioned, criticized, and explained away long enough by courts and commentators, and is best forgotten as an incomplete, negative gloss on an accepted pleading standard:  once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.  *Conley* described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."  *Twombly*, 550 U.S. at 562.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   "recognized as having done the job without problem until David Gaschke and Laura Nicolosi

2   became his supervisors," and that on his performance appraisal for the October 2007-September

3   2008 evaluation period, he received a successful rating.  (Am. Compl. ¶¶ 16, 48, 53.)  These

4   allegations sufficiently address Plaintiff's qualifications for his position.

5         On the issue of adverse employment action, Plaintiff alleges that "any perceived

6   performance deficiency was the result of the harassment and adverse employment actions by his

7   employer," *id.* ¶ 16, that he was placed on a performance improvement plan for being late on one

8   audit assignment though no other auditor had been placed in such a plan despite the fact that only

9   one auditor had completed audits on time, *id.* ¶ 17, and that he was assigned to clean the kitchen,

10   *id.*  He also alleges that "[w]ith the discriminatory work assignments, Sumera's terms and

11   conditions of employment were materially affected.  Sumera was not given the opportunity to do

12   his job on equal footing with similarly situated employees because Sumera's terms and conditions

13   of employment were materially affected by supervisors' discriminatory and/or retaliatory

14   conduct."  (*Id.* ¶ 18.)  The specific actions referenced in these allegations are the kitchen cleaning

15   assignment and the performance improvement plan, and at the pleading stage, they suffice as

16   potential instances of adverse employment actions based on Plaintiff's protected status, as

17   illustrated by the allegations discussed immediately below.[6]

18         As to purportedly similarly situated individuals, Plaintiff alleges that "[n]on white-/older

19   employees were subjected to harsher discipline than accorded white and younger individuals for

20   the same or comparable alleged misconduct or performance related issues," that "[o]lder or non-

21   white employees were subjected to pressure and coercion to abandon employment with the OIG,"

22   and that "[a]uditors not members of protected minority classes received preferential treatment."

23   (*Id.* ¶¶ 12, 13, 19.)  Plaintiff then goes on to allege that "[o]ther, late auditors did not undergo a

24

25   [6] In the amended complaint, Plaintiff also alleges that "Nicolosi required Sumera to submit daily
reports instead of weekly reports," however, it appears Plaintiff identifies this conduct as a basis
26   for his harassment claim, not his discrimination claim.  *See* Am. Compl. ¶ 24 ("This harassment,
of which there is ample evidence—from daily reports required of Sumera, to the kitchen cleaning,
27   to being singled out for the PIP—forms the means by which in part a hostile work environment
interfered with the enjoyment of all benefits and conditions of the contractual relationship of
28   employment and is therefore actionable.").

PIP were not over 40, and were not members of a protected class." (*Id.* ¶ 23.) Plaintiff further alleges specific examples of purported preferential treatment, including being singled out for a performance improvement plan for being late on an audit when only a single auditor had been on time during the previous year and not being offered the type of audit support that "a Caucasian auditor doing the same work" received. (*Id.* ¶ 23.) These allegations adequately illustrate how similarly situated individuals, performing similar work as Plaintiff, but different only in terms of race or age, were treated more favorably than Plaintiff.

For these reasons, the allegations in Plaintiff's amended complaint are sufficient to state a claim for discrimination that is plausible on its face. Defendant's motion to dismiss this claim is, therefore, denied.

> ### b.    *Harassment under Title VII*

In order to state a claim for hostile work environment under Title VII, a plaintiff must establish that (1) he was subjected to verbal or physical conduct a based on race or national origin, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment. *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634 (9th Cir. 2003).

Defendant correctly asserts that the only specific acts of purported harassment Plaintiff alleges in his amended complaint are the required daily reports, cleaning the kitchen, and being placed on a performance improvement plan. (*See* Def.'s Mot. at 16.) The Court, however, disagrees with Defendant's argument that these few instances of specific conduct are unaccompanied by allegations that they were based on race, national origin, or age, as discussed *supra* Part II.B.2.a.

Moreover, Plaintiff also alleges that "[w]ith the discriminatory work assignments, Sumera's terms and conditions of employment were materially affected," Am. Compl. ¶ 18, and that he "consistently complained about the harassment he received on the job . . . [which] forms the means by which in part a hostile work environment interfered with the enjoyment of all benefits and conditions of the contractual relationship of employment," *id.* ¶ 24. These

United States District Court
Northern District of California

1  allegations, when viewed in conjunction with the other allegations in the amended complaint,

2  state a plausible claim for harassment.

3       Accordingly, Defendant's motion to dismiss Plaintiff's harassment claim is denied.

4       *c.*    *Retaliation under Title VII*

5       Section 2000e-3(a) makes it unlawful for an employer "to discriminate against any of [its]

6  employees . . . because [the employee] has opposed any practice made an unlawful employment

7  practice" by Title VII, or because he/she has made a charge, testified, assisted or participated in

8  any manner in an investigation, proceeding, or hearing under Title VII.  To assert a claim of

9  retaliation claim under § 2000e-3, a plaintiff must demonstrate that: (1) he was engaging in

10  protected activity, (2) he suffered an adverse employment decision, and (3) there was a causal link

11  between his activity and the adverse employment decision.  *Ray v. Henderson*, 217 F.3d 1234,

12  1240 (9th Cir. 2000).

13       As to the first element, an employee's formal or informal complaint regarding unlawful

14  employment practices is a "protected activity" under Title VII, and a plaintiff need only show that

15  his belief that an unlawful employment practice occurred was "reasonable."  *Passantino v.*

16  *Johnson & Johnson Consumer Prods., Inc.,* 212 F.3d 493, 506 (9th Cir. 2000).  With respect to

17  the second element, a challenged action must be "materially adverse," which means that it would

18  dissuade a reasonable worker from exercising protected rights.  *Burlington N. & Santa Fe Ry. Co.*

19  *v. White,* 548 U.S. 53, 68 (2006).  As to the third element, a plaintiff may establish a causal link

20  between the protected activity and the adverse action by circumstantial evidence, including the

21  employer's knowledge of the protected activity and a proximity in time between the protected

22  action and the adverse employment act.  *Jordan v. Clark,* 847 F.2d 1368, 1376 (9th Cir. 1988).

23       Defendant argues that "Plaintiff fails to specify the adverse employment action(s) that he

24  claims were taken in retaliation for protected activity, or the causal link between a specified

25  adverse employment action and a specified protective activity."  (Def.'s Mot. at 18-19.)   To the

26  extent Plaintiff claims he received a notice of proposed removal in retaliation for his informal and

27  formal EEOC complaints, the Court rejects Defendant's argument that Plaintiff has failed to

28

identify adverse employment actions.[7]  Defendant's additional argument that Plaintiff has failed to identify the causal link between the notice of proposed removal and either EEOC complaint also lacks merit.  On this point, Plaintiff alleges that "the EEO e-mailed Sumera's allegations to management.  Management, Gaschke and Nicolosi, e-mailed their response to the EEO on October 21, 2009."  (Am. Compl. ¶ 34.)  He also alleges that he received the notice of proposed removal only five months after his initial EEOC complaint and two months after his formal complaint.  (*Id.* ¶ 15.)  These allegations are sufficient to state a claim for retaliation.

Therefore, Defendant's motion to dismiss is denied as to Plaintiff's retaliation claim.

### d.    Age discrimination

The ADEA provides that all personnel decisions affecting federal employees who are at least 40 years of age shall be made free from discrimination based on age.  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009).  To state a claim for age discrimination under the ADEA, a plaintiff must establish that (1) he was at least forty years old, (2) performing his job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances giving rise to an inference of age discrimination."  *Diaz v. Eagle Produce, Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).

As discussed *supra* Part II.B.2.a, Plaintiff alleges that he was ably performing his job but placed on a performance improvement plan, assigned to clean and the kitchen, and was not given the type of audit support provided to other employees who were not members of a protected class.  (*See* Compl. ¶¶ 16, 17, 19, 51.)  He specifically alleges that "[o]ther, late auditors did not undergo a PIP were not over 40, and were not members of a protected class."  (*Id.* ¶ 23.)  Plaintiff also alleges that "[n]on-white and/or older employees were singled out for disparate treatment, harassment, termination or forced retirement" and that he was "forced to choose early retirement over termination."  (*Id.* ¶¶ 10, 39.)

---

[7] If, however, Plaintiff believes he has any other basis for his retaliation claim, such as the unsatisfactory performance review referenced in paragraph 38 of the amended complaint, he shall clearly identify that separate basis in the appropriate section in his second amended complaint. With such level of specificity, the second amended complaint need not contain allegations such as "[e]very time Sumera engaged in protected activity, his employer retaliated" *see* Am. Compl. ¶ 40.

In the portion of the amended complaint that Plaintiff devotes to his ADEA claim, he adds that "Defendant caused the discharge, and otherwise discriminated against Plaintiff with respect to Sumera's compensation, terms, conditions, or privileges of employment because of Sumera's age," and that "Defendant limited segregated, or otherwise classifies Sumera and those similarly situated as Sumera in ways which would or tended to deprive Sumera of his employment opportunities, or otherwise adversely affect Sumera's status as an employee because of such individual's age." (*Id.* ¶ 60, 61.) These allegations, taken together, state a plausible claim for age discrimination.

Accordingly, Defendant's motion to dismiss this cause of action is denied.

## III.   CONCLUSION

For the reasons set forth above, Defendant's motion for a more definite statement is GRANTED. To the extent that Plaintiff wishes to assert distinct Title VII claims, he shall present each distinct Title VII claim separately, consistent with Federal Rule of Civil Procedure 10(b) ("If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count . . . ."). He shall also clearly identify the factual basis for each distinct Title VII claim as well as his ADEA claim.

Defendant's motion to dismiss is GRANTED in part and DENIED in part. All claims against the Department of Justice and the defendants sued in their individual capacities are dismissed with prejudice. Plaintiff's prayers for punitive damages and for damages against the individual defendants are dismissed with prejudice. The motion is denied to the extent that it seeks dismissal of Plaintiff's amended complaint for failure to state a claim upon which relief can be granted or for failure to exhaust administrative remedies.

///

///

///

///

///

///

United States District Court
Northern District of California

14

Plaintiff shall file a second amended complaint within 14 days of this order.  If Plaintiff fails to file a second amended complaint within 14 days of this order, the Court may dismiss this action with prejudice.  The Court reminds Plaintiff that continued failures to comply with filing deadlines will not be tolerated.

IT IS SO ORDERED.

Dated: July 3, 2014

_____
KANDIS A. WESTMORE
United States Magistrate Judge