UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| RUBEN SUMERA, | No. 4:13-cv-01950-KAW |
| Plaintiff, | **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| LORETTA LYNCH, Attorney General of the United States, in her official capacity; | |
| Defendant. | |

This is an employment discrimination case against Defendant Loretta E. Lynch, in her official capacity as the United States Attorney General. Plaintiff brings claims for discrimination, hostile work environment and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. § 633a. Defendant filed her motion for summary judgment on November 19, 2015. (ECF 69.) Plaintiff's opposition was due on December 11, 2015. Instead of filing a memorandum in opposition to the summary judgment motion, Plaintiff rested solely on objections to the evidence Defendant submitted in support of the motion. (ECF 77.) Defendant filed a reply memorandum, responding to the evidentiary objections on December 31, 2015. (ECF 78.)

The Court deems the matter suitable for disposition without hearing pursuant to Civil Local Rule 7-1(b) and VACATES the hearing currently set for February 4, 2016. Having reviewed the papers filed by the parties and carefully considered the relevant legal authority, the Court GRANTS the motion for the reasons set forth below.

## I.   STATEMENT OF FACTS

Plaintiff was employed as an auditor with the San Francisco Regional Audit Office of the Inspector General ("OIG") in the Department of Justice ("DOJ") from April 1998 until his resignation in March 2010. (Sumera Dep. at 16:21-18:10.)[1] The OIG conducts internal audits of DOJ divisions and components as well as external audits of grants that DOJ awards to outside organizations. (*Id.* at 33:20-35:11.) The expected timeline for completion of an internal audit is nine months, whereas the expected timeline for completion of an external audit related to a grant is five months. (*Id.* at 35:12-36:10.)

Laura Nicolosi, who was one of two Assistant Regional Audit Managers, began supervising Plaintiff in 2008. (Sumera Dep. at 31:8-15.) When Nicolosi left OIG around October 30, 2009, David Gaschke, the Regional Audit Manager, became Plaintiff's first-level supervisor. (Sumera Dep. at 23:14-24:13.)

### A.   The County of Asotin Audit

In December 2007, Plaintiff was assigned to audit a grant awarded to Asotin County. (Sumera Dep. at 51-52.) The audit initially began as a limited scope Internal Control Survey audit and had an expected time frame for completion of 45 to 90 days from the entrance conference on January 15, 2008. (Sumera Dep. at 52.) On April 2, 2008, Nicolosi asked Plaintiff to close out the Internal Control Survey steps and prepare for a full scope grant audit. (Sumera Dep. at 54-55.) Under Audit Division guidelines, external audits are expected to be completed within five months of the entrance conference. (Sumera Dep. at 35-36; Gaschke Dep. at 60.)

Nicolosi and Plaintiff discussed the schedule for issuing a draft report to Asotin County and the grant agency and set July 29, 2008, as the deadline, approximately six and a half months after the entrance conference. (Sumera Dep. at 55-57.) The draft report was not issued until February 1, 2009, more than twelve months after the entrance conference. (Sumera Dep. at 66, 82-83.)

///

///

---

[1] The transcripts of the depositions of Plaintiff Ruben Sumera, (former) Assistant Regional Audit Manager Laura Nicolosi, Regional Audit Manager David Gaschke, and Program Analyst Karl Hense are attached to the Declaration of Wendy M. Garbers, as Exhibits A, B, C, and D, respectively. (ECF 70-72.)

**B.     The Sunnyside Audit and Issuance of the Performance Improvement Plan**

In February 2009, Plaintiff was assigned to audit two grants received by the City of Sunnyside in Washington state. (Sumera Dep. at 119.) The Sunnyside grants were approximately $150,000 each. (Sumera Dep. at 418.) Despite being given an unusually long period of time to prepare for the entrance conference on May 5, 2009, Plaintiff exhibited errors at the outset of his work on the Sunnyside audit that should not have been made by an experienced GS-13 auditor. (Sumera Dep. at 119-120 & Ex. 13.)

Plaintiff was given a Notification of Unacceptable Performance and placed on a Performance Improvement Plan on July 31, 2009. (Sumera Dep., Ex. 3; Gaschke Dep. at 71-72.) Mr. Sumera provided a written response to the PIP. (Sumera Dep., Ex. 7.)

**C.     Notice of Proposed Removal**

The PIP specifically required Plaintiff to complete the Sunnyside audit by October 30, 2009, which gave Plaintiff nearly six months (more than the usual five months) from the entrance conference to submit his draft audit report. (Sumera Dep. at 141-45.) Plaintiff never completed the Sunnyside audit. (Sumera Dep. 224-225.) Gaschke issued Plaintiff a Notice of Proposed Removal on February 25, 2010. (Sumera Dep. at 214 & Ex. 13.)

Plaintiff attributed his inability to complete the Sunnyside audit to the reports and meetings that Nicolosi required of him during the period of the PIP, which he claimed were attempts by Nicolosi to "waste" his time. (Sumera Dep. at 134-36.) Nicolosi left OIG in October 2009, at which time Plaintiff no longer had to meet with her or submit daily reports. (Sumera Dep. 365.) By the time Plaintiff resigned in March 2010, nearly five months later, Plaintiff still had not completed the Sunnyside audit. (Sumera Dep. at 224-225.) At his deposition, Plaintiff testified that he needed more time beyond March 2010 to complete the Sunnyside audit. (Sumera Dep. at 226.) He could not, however, provide an estimate of how much more time he needed. (Sumera Dep. at 226-227.) During his third deposition session, Plaintiff testified, for the first time, that one of the reasons he didn't finish the Sunnyside audit was because Gaschke "denied" his "request" to return to Sunnyside for a follow-up site visit. However, Plaintiff acknowledged that he never actually made this request to Gaschke directly, who was then his first-line supervisor. (Sumera Dep. at 403-05.)

///

**D.     Plaintiff Elects to Resign Before Any Decision Is Made on the Proposed Removal**

On March 24, 2010, Plaintiff submitted a letter of resignation to Gaschke. (Sumera Dep., Ex. 14.) In it, Plaintiff stated that he had elected to take early retirement to "take advantage of the FERS Deferred Retirement Program" and had made this decision "with much thought and deliberation." (*See id.*) Plaintiff did not wait for the DOJ to make a determination on the proposed removal and instead decided to resign because, as he explained, "I didn't finish the Sunnyside audit and I don't want removal on my personnel record." (Sumera Dep. at 244-246.) Plaintiff's last day was March 26, 2010. (Sumera Dep. at 224.)

**E.     Plaintiff's Allegations**

Plaintiff commenced this action on April 29, 2013. (Compl., Dkt. No. 1.) In the operative complaint, Plaintiff, who describes himself as a Filipino male over the age of 40, alleges that his supervisors engaged in a series of discriminatory and harassing actions against him because of his race, national origin, age, and participation in protected activity. (2d Am. Compl. ("SAC") ¶¶ 4, 7.)

Plaintiff asserts that he was and is qualified for his position and that he began experiencing problems only after Gaschke and Nicolosi joined the San Francisco Division. (*Id.* ¶¶ 10, 16.) According to Plaintiff, before these individuals became his supervisors, he was "ably performing his job" and "[b]ut for the harassment and actions of the two individuals . . . [he] would have been able to meet standards for successful performance; any perceived performance deficiency was the result of the harassment and adverse employment actions by his employer." (*Id.* ¶ 16.)

Plaintiff alleges that he was singled-out for a PIP after he was late on one audit assignment. (*Id.* ¶ 17.) He asserts that only a single auditor timely completed assignments during the previous year. (*Id.*) According to Plaintiff "[o]ther late auditors did not undergo a PIP, were not over 40, and were not members of a protected class." (*Id.* ¶¶ 17, 40.)

Plaintiff also alleges that he was assigned to clean the kitchen during his audit, and that during the week he spent on "the humiliating task," he was unable to work on his audit, resulting in another citation for tardiness. (*Id.* ¶ 17.) Plaintiff further alleges that these "discriminatory work assignments" materially affected the terms and conditions of his employment, depriving him of "the opportunity to do his job on equal footing with similarly situated employees." (*Id.* ¶ 18.) He claims that auditors who

4

were not members of a protected class received preferential treatment. (*Id.* ¶ 19.) According to Plaintiff, his supervisors had developed a pattern of singling-out minorities and people over the age of 40 for separation beginning in October 29, 2009. (*Id.* ¶ 22.)

On September 11, 2009, Plaintiff filed an informal EEO complaint alleging discrimination based on race, national origin, and age. (*Id.* ¶ 14.) Thereafter, on December 14, 2009, Plaintiff filed his formal EEO complaint. (SAC ¶ 15.) According to Plaintiff, that Nicolosi and Gaschke retaliated against him for making these complaints by putting him on a PIP and issuing the Notice of Proposed Removal. (Sumera Dep. at 212-13.) But, Plaintiff concedes that he was put on the PIP *before* he made a formal EEO complaint. (Sumera Dep. at 212:20 – 213:5.) Furthermore, in the weekly meetings that Plaintiff, Gaschke, and Nicolosi had to discuss Plaintiff's performance, the managers informed Plaintiff that he was failing the PIP. (Sumera Dep. at 216:8-18.) In fact, Gaschke testified that he first became aware of Plaintiff's EEO complaint in October 2009. (Gaschke Dep. at 80.)

## II.     LEGAL STANDARDS

### A.     Summary Judgment Standard

Summary judgment is appropriate when, after adequate discovery, there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *S. Cal. Gas. Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003).

On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may discharge its burden of production by either (1) "produc[ing] evidence negating an essential

element of the nonmoving party's case" or (2) after suitable discovery "show[ing] that the nonmoving party does not have enough evidence of an essential element of its claim or defense to discharge its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000); *see also Celotex*, 477 U.S. 324-25.

Once the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250. "A party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001). "Instead, the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial." *Id*. The non-moving party must produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NMS Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of material fact to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011).

**B.     Legal Standard for Claims Under Title VII**

Claims of discrimination under Title VII are analyzed using a burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). To establish a *prima facie* case of disparate treatment under Title VII, a plaintiff must show that (1) he is a member of a protected class, (2) he was qualified for the position, (3) he suffered an adverse employment decision, and (4) he was treated differently than similarly situated persons outside his protected class. *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004); *Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003). Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802-04; *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981). "The defendant

[has] the burden of producing an explanation to rebut the prima facie case—*i.e.,* the burden of producing evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). After defendant provides a legitimate, non-discriminatory reason for the challenged actions, any presumption of discrimination "simply drops out of the picture." *Id.* at 511. The burden then shifts back to the plaintiff to raise a genuine factual issue as to whether the employer's stated reason was a "pretext" or cover-up for unlawful discrimination. *See Washington v. Garrett*, 10 F.3d 1421, 1432 (9th Cir. 1993). A plaintiff can prove pretext either "(1) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1127 (9th Cir. 2000). "[A] reason cannot be proved to be a 'pretext for discrimination' unless it is shown *both* that the reason was false, *and* that discrimination is the real reason." *St. Mary's Honor Ctr.*, 509 U.S. at 515 (emphasis in original).

### C. Legal Standard for Claims Under the ADEA

The ADEA protects federal employees over the age of 40 by making it unlawful for government employers to discriminate "because of [an] individual's age." *Shelley v. Geren*, 666 F.3d 599, 606-07 (9th Cir. 2012) (citing 29 U.S.C. § 633a(a)). Like Title VII claims, ADEA claims are governed on summary judgment by the *McDonnell Douglas* burden-shifting evidentiary framework. *Id.* at 608. Under this framework, the plaintiff bears the initial burden to "establish a prima facie case of age discrimination." *Id*. at 608 (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1280-81 (9th Cir. 2000)). A *prima facie* showing requires the plaintiff to establish (1) that he is at least forty years old, (2) that he was performing his job satisfactorily, (3) that he suffered an adverse employment action, and (4) that a substantially younger employee was treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *See id*.; *Whitman v. Mineta*, 541 F.3d 929, 932 (9th Cir. 2008). "To prevail on a claim for age discrimination under the ADEA, a plaintiff must prove at trial that age was the 'but-for' cause of the employer's adverse action." *Shelley v. Geren*, 666 F.3d at 607 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)). "Unlike Title

VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor." *Gross*, 557 U.S. at 174.

If, and only if, a *prima facie* showing is made, "the burden of production shifts to the [employer] to articulate a legitimate non-discriminatory reason for its adverse employment action." *Rahlf v. Mo-Tech Corp, Inc.*, 642 F.3d 633, 637 (8th Cir. 2011). Once the employer articulates a legitimate reason for its conduct, it is the plaintiff's ultimate burden "to demonstrate that there is a material genuine issue of fact as to whether the employer's purported reason is pretext for age discrimination." *Shelley*, 666 F.3d at 608; *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889-90 (9th Cir. 1994). Plaintiff "must do more than establish a *prima facie* case and then deny the credibility of the [defendant's] witnesses." *Schuler v. Chronicle Broad. Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986). Rather, the plaintiff must furnish "specific and significantly probative evidence" that the employer's proffered justifications were pretextual." *Id*.

### D.  Legal Standard for Retaliation Claims Under Title VII and the ADEA

Both Title VII and the ADEA prohibit federal employers from retaliating against employees who oppose unlawful discrimination. *Gomez-Perez v. Potter*, 553 U.S. 474, 477 (2008); *White v. Gen. Servs. Admin.*, 652 F. 2d 913, 917 (9th Cir. 1981). To establish a *prima facie* case of retaliation, a plaintiff must establish that (1) he engaged in protected activity, (2) he suffered an adverse employment action, and (3) "there was a causal link between the [two.]" *Poland v. Chertoff*, 494 F.3d 1174, 1179-80 (9th Cir. 2007) (citing *Villiarimo v. Aloha Island Air*, *Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002)); *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988); *Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987). In the retaliation context, an "adverse employment action" is conduct that is "reasonably likely to deter the charging party or others from engaging in protected activity." *Poland*, 494 F.3d at 1180; *Ray v. Henderson*, 217 F.3d 1234, 1242-43 (9th Cir. 2000). However, "only non-trivial employment actions that would deter reasonable employees from complaining about [discrimination] will constitute actionable retaliation." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000); *see also Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993) (adverse employment action requires more than "mere inconvenience or alteration of job responsibilities"). Once a plaintiff establishes a *prima facie* case, the employer bears the burden of articulating a legitimate, non-

discriminatory, non-retaliatory reason for its actions, and if it does so, the employee must then come forward with competent evidence that the employer's reason is a mere pretext for unlawful retaliation. *Manatt v. Bank of Am., N.A.*, 339 F.3d 792, 800 (9th Cir. 2003).

### III. DISCUSSION

Plaintiff alleges that he was subjected to a series of discriminatory actions because of his race, national origin, and age, and further retaliated against after he filed an EEO complaint. Specifically, Plaintiff, who describes himself as a Filipino male over the age of 40, alleges that the DOJ discriminated against him when (1) Nicolosi placed him on a PIP on July 31, 2009 for being late on one audit assignment but did not place any other auditors who were late on a PIP, (2) in August 2009, Nicolosi required him to submit daily reports instead of weekly reports, a task that no other auditor was required to perform, and (3) Nicolosi humiliated Plaintiff by forcing him to clean the office kitchen, which prevented him from working on his audit and timely completing it. (SAC ¶¶ 7, 17, 31.) Several of the challenged actions were not adverse employment actions. In any event, the record shows that the DOJ had legitimate non-discriminatory reasons for the challenged actions. Plaintiff has offered nothing to suggest that any of these reasons were pretextual.

Plaintiff cannot establish a *prima facie* case based on the PIP, the requirement of daily reports, or the kitchen cleaning assignment[2] because they did not materially affect the terms and conditions of employment and therefore are not adverse employment actions. *See Cozzi v. Cty. of Marin*, 787 F. Supp. 2d 1047, 1061 (N.D. Cal. 2011) ("Written warnings and performance improvement plans are not adverse actions where they do not materially affect the terms and conditions of employment."); *Cole v. Illinois*, 562 F.3d 812, 818 (7th Cir. 2009) ("[T]he performance improvement plan was not a materially adverse action because Cole suffered no reduction in responsibility, pay, hours, or any other benefit, and it did not impose a material change in her employment duties."); *Morales-Vallellanes v. Potter*, 605 F.3d 27, 38 (1st Cir. 2010) ("[A] minor disruption in the tasks [an employee] preferred to perform cannot, as

---

[2] With respect to the kitchen cleaning assignment, Plaintiff has not made a *prima facie* showing that it was discriminatory. The record reflects that many employees, including Regional Audit Manager Gaschke were given collateral duties. (Gaschke Dep. at 62 (Gaschke was on the "roster" for "cleaning out the refrigerator."); Hense Dep. at 97-98 (testifying that employees had "duties to clean out the refrigerator" and "go clean up the kitchen"); Sumera Dep. at 103 ("David Gaschke had a piece of paper with a schedule requiring auditors to clean the refrigerator.").)

a matter of law, sustain [a] claim for damages under Title VII's antidiscrimination provision.").

Even if these challenged actions are deemed adverse, OIG has demonstrated legitimate, non-discriminatory reasons for them. As set forth above, there were, unfortunately, multiple problems with Plaintiff's performance. They include:

- Being significantly late in completing audit work. Plaintiff was supposed to issue his draft report on the Asotin audit on July 29, 2008. (Sumera Dep. 55-57.) The draft report was not issued until February 1, 2009.[3] (Sumera Dep. 66-, 82-83.) Plaintiff does not dispute that the audit was late. (Sumera Dep. 82, 83.)
- Plaintiff never completed the Sunnyside grant audits. Plaintiff does not dispute that the work was never completed. (Sumera Dep. at 224-225.)

Defendant has produced substantial evidence demonstrating that Plaintiff was terminated for legitimate, nondiscriminatory reasons. Plaintiff has failed to present any evidence demonstrating that the performance-related issues Defendant has identified were pretextual or that other similarly-situated auditors outside his protected class were not subject to the same treatment. As such, Defendant is entitled to summary judgment on Plaintiff's discrimination claims under Title VII and the ADEA.

Plaintiff also brings a claim for hostile work environment. In order to demonstrate the *prima facie* elements of a hostile work environment claim, a plaintiff must raise a triable issue of fact as to whether (1) the plaintiff was subjected to verbal or physical conduct because of protected characteristics; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment. *Manatt*, 339 F.3d at 798 (citing *Kang v. U. Lim Am., Inc.,* 296 F.3d 810, 817 (9th Cir. 2002)). A plaintiff must show that the work environment was abusive from both a subjective and an objective point of view. *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993)). "To determine whether conduct was sufficiently severe or pervasive to violate Title VII, [the courts] look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it

---

[3] Plaintiff was placed on a PIP in July 31, 2009. (Sumera Dep. 213.)

unreasonably interferes with an employee's work performance." *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003). "[O]nly severe or pervasive misconduct can give rise to a hostile work environment." *Capristo v. Brennan*, No. C-15-1071 EMC, 2015 WL 4396268, at *4 (N.D. Cal. July 17, 2015). That "standard is not without some teeth." *Id.* "The Supreme Court has made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment." *George v. Leavitt*, 407 F.3d 405, 416 (D.C. Cir. 2005).

Plaintiff has not put forward evidence of mistreatment that satisfies this standard. Significantly, Plaintiff does not claim that he was subjected to any physical or verbal abuse. He testified at his deposition that Nicolosi and Gaschke never yelled at him, called him names, or made any racial or age-based comments. (Sumera Dep. at 43, 383-87.) Plaintiff nevertheless claims that he was subject to a hostile work environment because Nicolosi "nitpicked" his work and called him frequently to check on the progress audits, as well as the fact that he was put on a PIP and tasked with cleaning the kitchen. (Sumera Dep. at 383-87.)

Criticisms of a subordinates work—like the "nitpicking," monitoring and the PIP—do not give rise to a hostile work environment. "Criticisms of a subordinate's work and expressions of disapproval (even loud expressions of disapproval) are the kinds of normal strains that can occur in any office setting . . . . [T]hey do not demonstrate a work environment that was pervaded by discrimination." *Singh v. U.S. House of Representatives*, 300 F. Supp. 2d 48, 56 (D.D.C. 2004). Neither do negative performance reviews. *Hutchinson v. Holder*, 815 F. Supp. 2d 303, 322 (D.D.C. 2011) ("[N]egative performance reviews—even if inaccurate, as Plaintiff claims—are not strong indicia of a hostile work environment."). Nor can "close scrutiny of assignments by management be characterized as sufficiently intimidating or offensive in an ordinary workplace context." *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 94 (D.D.C. 2009).

The fact that Plaintiff was briefly given the collateral duty of kitchen organization does not give rise to a hostile work environment either. "[C]omplaints over undesirable job responsibilities and office arrangements do not support a hostile work environment cause of action." *Hussain v. Gutierrez*, 593 F. Supp. 2d 1, 7 (D.D.C. 2008) (holding that plaintiff's allegations that "she was asked to do tasks below her job title, asked to sit in the reception area, and told how to organize her desk" did not give rise to a

hostile work environment); *see also Brooks v. Grundmann*, 851 F. Supp. 2d 1, 6 (D.D.C. 2012) ("[A]ssignment to undesirable duties" does not give rise to a hostile work environment.). There is no evidence that plaintiff was given the kitchen duty *because of* his race, national origin or age. The evidence is to the contrary. It was typical for employees in San Francisco Regional Audit Office to be asked to perform collateral duties—even Regional Audit Manager Gaschke. (Gaschke Dep. at 62 (Gaschke was on the "roster" for "cleaning out the refrigerator."); Hense Dep. at 97-98 (testifying that employees had "duties to clean out the refrigerator" and "go clean up the kitchen"); Sumera Dep. at 103 ("David Gaschke had a piece of paper with a schedule requiring auditors to clean the refrigerator.").) Moreover, Nicolosi sent Plaintiff a note, thanking and commending him for his efforts in the kitchen (Sumera Dep. at 110-11), which is not consistent with an intention to "humiliate" Plaintiff.

"A hostile-work-environment claim is simply not a cause of action for the ordinary tribulations of the workplace." *Hutchinson*, 815 F. Supp. 2d at 323. While Plaintiff may have found his working environment distasteful, no reasonable jury could conclude that the issues about which he complains are sufficiently severe to have created a hostile work environment. *See Vasquez*, 349 F.3d at 643-44.

Finally, Plaintiff brings a claim for retaliation. Plaintiff contends that Gaschke issued him a Notice of Proposed Removal on February 25, 2010, in retaliation for the informal EEO complaint that he filed on September 11, 2009, and the formal EEO complaint he filed on December 14, 2009. (SAC ¶¶ 102-103; Sumera Dep. at 213:6-20.) Plaintiff further alleges that the EEO initially contacted his supervisors about his allegations on September 29, 2009. (SAC ¶ 93).

But, Plaintiff's *prima facie* case of retaliation fails because he cannot demonstrate a causal link between his protected activity and the Notice of Proposed Removal. Nicolosi communicated to Plaintiff that there were problems with his performance long before he contacted the EEO. Plaintiff was placed on a PIP in July 2009. (Sumera Dep. at 212-13.) In the meetings that Plaintiff had with Nicolosi and Gaschke during the period of the PIP, his supervisors communicated to Plaintiff that they did not believe he was performing well under the PIP. (Sumera Dep. at 216:8-18 ("Sometimes they would say that I'm failing the PIP."). Thus, Plaintiff cannot raise an inference of causation because the DOJ's actions after the protected activity continued on the same course they had been before the protected activity. *See, e.g.*, *Clark Cnty. Sch. Dist.*, 532 U.S. at 272 (fact of employer "proceeding along lines previously

contemplated . . . is no evidence whatever of causality"). "Since [the record] has established that h[is] supervisors began the process of terminating h[is] employment before []he engaged in protected activity, []he cannot rely on temporal proximity to satisfy the causal connection element of a *prima facie* case of Title VII retaliation." *Risco v. McHugh*, 868 F. Supp. 2d 75, 114 (S.D.N.Y. 2012).

The DOJ also had legitimate, non-retaliatory reasons for the purportedly adverse employment actions Plaintiff complains of here. Plaintiff has not come forward with any evidence showing that these explanations were a pretext. Plaintiff has, therefore, failed to raise a triable issue as to retaliation.

### IV.    OBJECTIONS TO EVIDENCE

Plaintiff objects to portions of the declaration of Wendy M. Garbers ("Garbers Declaration"), his deposition transcript and exhibits 3, 7, and 12-15 to that transcript, the transcripts for the depositions of Laura Nicolosi, David Gaschke, and Karl Hense, and the December 12, 2012 decision by Administrative Judge David T. Kelley. The Court addresses each piece of evidence in turn.

#### A.    Garbers Declaration

Plaintiff objects to paragraphs 2-6 of the Garbers Declaration on the grounds that:

> These averments lack foundation, fail to demonstrate *factually* any basis for personal knowledge possessed by Ms. Gerbers [*sic*] as to the authenticity of the attachments (she did not attend the depositions, for example, and do not demonstrate whether the documents ostensibly authenticated are in fact not hearsay or somehow subject to an exception to the hearsay exclusion. . . .  Thus, because the paragraphs [2-6] are meaningless in this context, these paragraphs are not relevant FRE, Rules 401-403; "[i]rrelevant evidence is not admissible." FRE, Rule 402.

(Pl.'s Objections at 2.)

The challenged paragraphs to the Garbers Declaration are as follows:

> 2. The deposition of Plaintiff Ruben Sumera was taken on April 30, July 15, and September 15, 2015. Attached hereto as Exhibit A is a true and correct copy of the transcript of Mr. Sumera's deposition, as well as Exhibits 3, 7, 12, 13, 14, and 15 to Mr. Sumera's deposition.
>
> 3. The deposition of (former) Assistant Regional Audit Manager Laura Nicolosi was taken on June 18, 2015. Attached hereto as Exhibit B is a true and correct copy of the transcript of Ms. Nicolosi's deposition.
>
> 4. The deposition of Regional Audit Manager David Gaschke was taken on June 4, 2015. Attached hereto as Exhibit C is a true and correct copy of the transcript of Mr. Gaschke's deposition.
>
> 5. The deposition of Program Analyst Karl Hense was taken on August 27, 2015. Attached hereto as Exhibit D is a true and correct copy of the transcript of Mr. Hense's

deposition.

6. On December 12, 2012, EEOC Administrative Judge David T. Kelley issued a Memorandum Opinion ruling in Defendant's favor and finding that Plaintiff had not been discriminated against. A true and correct copy of the Memorandum Opinion is attached hereto as Exhibit E.

(Garbers Decl. ¶¶ 2-6.).

Plaintiff's objections to the Garbers Declaration are OVERRULED. Paragraph 1 to the Garbers Declaration reads: "I am an Assistant United States Attorney in the Northern District of California and counsel of record for Defendant Loretta E. Lynch, United States Attorney General, in the above-captioned action." (*Id.* ¶ 1.) The exhibits to Garbers Declaration were, therefore, properly authenticated based on the personal knowledge Ms. Garbers obtained in her capacity as counsel of record for Defendant, irrespective of whether she personally attended the depositions.

### B.   Deposition transcripts

Plaintiff objects to his own deposition transcript and the transcripts of the depositions of Nicolosi, Gaschke, and Hense on the grounds that Defendant has relied on them "without establishing any foundation, personal knowledge, or authenticity." (Pl.'s Objections at 2-3.) He argues that they are hearsay and should be excluded. (*Id.* at 2-3.) He also objects to exhibits 3, 7, and 12-15 to the Plaintiff's deposition transcript on the grounds that they are not separately authenticated and are hearsay. (*Id.* at 2.)

Plaintiff's objections to deposition transcripts are OVERRULED. "A deposition or an extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent." *Orr v. Bank of America NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002). The transcripts for Plaintiff's deposition and the transcripts of the Gaschke and Hense depositions contain the required certification page and identify the name of the respective deponent. This is sufficient. The transcript of Nicolosi's deposition, however, does not contain the required certification page, and for this reason, the Court has not considered it in deciding the instant motion for summary judgment. The objection to the Nicolosi deposition transcript is, therefore, OVERRULED AS MOOT. Plaintiff's objection that the deposition transcripts are hearsay are also OVERRULED, as Plaintiff has not identified the specific content that cannot be presented in a form that would be admissible at trial. *See*

14

Fed. R. Civ. P. 56(c)(2).

Plaintiff's objections to certain exhibits to the transcript of his own deposition also fail. He objects to exhibits 3, 7, and 12-15 on the grounds that they are not separately authenticated and are hearsay. (*Id.* at 2.) Plaintiff, however, authenticated and laid the foundation for each exhibit during his deposition. Exhibit 3 is a "Notification of Unacceptable Performance and Performance Improvement Plan." (Sumera Dep., Ex. 3.) At his deposition, when shown a copy of the marked exhibit, Plaintiff testified that he recognized the document and that it looked like a copy of the PIP he received on or about July 31, 2009. (Sumera Dep. at 50-51.) Exhibit 7 is a "Response to Performance Improvement Plan" dated August 5, 2009. (Sumera Dep., Ex. 7.) At his deposition, when shown a copy of the marked exhibit, Plaintiff stated that he recognized the document, wrote it, and signed it. (Sumera Dep. 147-148.) Exhibit 12 is a letter from Ruben Sumera to Vontell D. Frost-Tucker. (Sumera Dep., Ex. 12.) Upon being shown a copy of the marked exhibit, Plaintiff testified that he recognized the document, that it was his writing, and that his signature appeared at the bottom of the document. (Sumera Dep. at 207-208.) Exhibit 13 is an "Official Notice of Proposed Removal." (Sumera Dep., Ex. 13.) Plaintiff was shown a copy of the marked exhibit, and he testified that it was a copy of the Notice of Proposed Removal he received on or about February 25, 2010. (Sumera Dep. 214.) Exhibit 14 is a copy of Plaintiff's letter of resignation. (Sumera Dep., Ex. 14.) When shown a copy of the marked exhibit, Plaintiff testified that he recognized the document, which he wrote, and identified it as his letter of resignation. (Sumera Dep. 224.) Exhibit 15 is Plaintiff's "Response to the Official Notice of Proposed Removal." (Sumera Dep., Ex. 15.) Plaintiff was shown a copy of the marked exhibit at his deposition, he testified that he recognized the document, and he identified it as his response to the proposed removal. (Sumera Dep. 232.)

Plaintiff's hearsay objection is also OVERRULED as to documents Plaintiff authored and signed, i.e., exhibits 7, 12, 14, and 15, which constitute statements of a party-opponent. *See* Fed. R. Civ. P. 801(d)(2). The Notification of Unacceptable Performance and Performance Improvement Plan (exhibit 3) and the Notice of Proposed Removal (exhibit 13) would be admissible business records. *See* Fed. R. Evid. 803(6). Plaintiff's hearsay objection to these documents, then, is also OVERRULED.

///

### C. EEOC decision

Plaintiff objects to the December 12, 2012 decision by Administrative Judge David T. Kelly on the grounds that it "is not relevant to these proceedings because it has no evidentiary value herein" and "Defendant has attached [it] . . . without establishing any foundation, personal knowledge, or authenticity." (Pl.'s Objections at 3.) Plaintiff argues that the decision is hearsay and should be excluded. (*Id.*) Because the Court has not relied on the decision in deciding the instant motion, Plaintiff's objections are OVERRULED AS MOOT.

### V. CONCLUSION

In accordance with the foregoing, Defendant's motion for summary judgment is GRANTED. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: 02/01/16

_____
KANDIS A. WESTMORE
United States Magistrate Judge